IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY | * * * |
| Plaintiff, | * * |
| vs. | Civil Action No. ADC-21-666 * * |
| RONALD FISHKIND, ET AL. | * * |
| Defendants. | * * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant De'Angelo Anthony ("Anthony") initially moved this Court for partial summary judgment on Plaintiff, Pennsylvania National Mutual Casualty Insurance Company's ("Plaintiff" or "Penn National") Complaint (ECF No. 1) seeking declaratory judgment. ECF No. 21. Penn National then filed a cross motion for summary judgment (ECF No. 27) and responded in opposition to Anthony's first motion. Anthony filed a second motion for summary judgment (ECF No. 28), acknowledging that the Court's ruling on the cross motions for summary judgment (ECF Nos. 27, 28) will make his motion for partial summary judgment moot. Anthony's second motion included his opposition to Penn National's cross motion. After considering the Motions and responses thereto, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds that there are no genuine issues of material fact as to the claim asserted. Accordingly, the Court will GRANT Penn National's Motion (ECF No. 27) and DENY Anthony's Motion (ECF No. 28).[1]

---

[1] As the Court will decide the cross motions (ECF Nos. 27, 28), it will deny Anthony's motion for partial summary judgment (ECF No. 21) as moot.

1

## BACKGROUND

Penn National issued a commercial general liability insurance contract (the "CGL Policy") that covered Fishkind's property at 912 N. Luzerne Avenue, Baltimore, Maryland 21205 (the "Property") from September 1, 1991 to September 1, 1993. ECF No. 1 ¶¶ 7–10; ECF No. 27-3 (covering the listed premises that Fishkind owned, rented, or occupied). Anthony was born on December 3, 1991 and resided at the Property from birth until March 5, 1992, when he moved to 605 Curley Street, Baltimore, Maryland 21224. *Id.* ¶ 14. On November 28, 2012, Anthony brought the underlying action in the Circuit Court for Baltimore City against Fishkind, alleging personal injuries that resulted from lead paint exposure at the property. *Id.* ¶ 11. Anthony tested for elevated blood lead levels on (i) July 9, 1992; (ii) January 7, 1993; (iii) April 8, 1993; (iv) and June 17, 1993, with the former two while residing at the Property and the latter two after moving to 605 Curley Street. *Id.* ¶ 15. The 605 Curley Street property was not covered by the CGL Property. ECF No. 27-3. The underlying action resulted in a jury verdict for Anthony and an ultimate underlying judgment of $809,841.00. *Id.* ¶ 16. On March 16, 2021, Penn National filed suit in this Court seeking declaratory judgment that, pursuant to the underlying state action, Penn National is only liable to Anthony for $659,939.43, or 81.49% of the total underlying judgment.[2] *Id.* ¶ 25.

## DISCUSSION

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[2] On May 14, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF Nos. 16, 17.

2

show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)). When viewing cross motions for summary judgment, the Court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law" and resolves "all factual disputes and any competing, rational inferences in the light most favorable to the party

opposing that motion." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (citations omitted).

### B. Cross Motions for Summary Judgment

In its Motion, Penn National contends there is no dispute that it is only liable for 81.49% of the underlying judgment because its liability is limited to a pro-rata time-on-the-risk allocation under Maryland law. ECF No. 27-1 at 2. Anthony, in turn, argues that Penn National is liable for the full amount of damages because the CGL Policy existed at the time of all of Anthony's four elevated blood lead levels, and his lead exposure stems solely from the insured property. ECF No. 28-1 at 7–8. Anthony also asks this Court to grant his request for the full post-judgment interest from Penn National. *Id.* at 12. I address each argument below.

#### 1. The Pro-Rata Time-on-the-Risk Calculation[3]

"In lead paint or continuous trigger cases such as this one, Maryland courts engage in a 'pro rata by time-on-the-risk allocation' of liability." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 113 (4th Cir. 2012) (citing Maryland case law). Such a method is "based on the fact that an insured purchases an insurance policy to indemnify it against injuries occurring within the policy period, not injuries occurring outside that period." *Id.* at 114 (citations and alterations omitted). The determination of how much Plaintiff owes from the underlying judgment is then calculated by "(1) dividing the time during which [Plaintiff] insured the property and [Defendant] experienced injuries from lead exposure (the 'numerator') by the entire time period during which [Defendant] experienced injuries from lead exposure (the 'denominator'); and (2)

---

[3] Penn National brings this action in federal court alleging diversity jurisdiction; accordingly, the Court applies "the same substantive law that a court in Maryland, the forum state, would apply if it were deciding this case." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 111 (4th Cir. 2012) (citations omitted).

4

multiplying that fraction by the total amount of the judgment." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Fishkind*, No. CV JKB-20-0947, 2021 WL 2141543, at *2 (D.Md. May 26, 2021). *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Jeffers*, 244 Md.App. 471, 481, *cert. denied sub nom.*, 468 Md. 549 (2020) (identifying the numerator as Plaintiff's time on the risk and denominator as the period of which Defendant suffered bodily injury). This calculation is rooted in the principle that "an insurance company cannot be held liable for periods of risk it never contracted to cover." *Roberts*, 668 F.3d at 109.

The extent of Plaintiff's liability can only be determined "by reference to the insurance contract." *Id.* at 114. Both this Court and the United States Court of Appeals for the Fourth Circuit have held that an insurer's responsibility is determined by the "plain and unambiguous" terms of the Policy. *Id.* at 118. When the policy terms specify only certain properties, such as "Premises you Own, Rent, or Occupy," the insurer is not liable for injuries that occur after the policy has ended or the property at issue is no longer covered. *See id.*; *Penn. Nat'l Mut. Cas. Ins. Co. v. Kirson*, No. TDC-18-3275, 2021 WL 979129, at *5 (D.Md. Mar. 16, 2021). To do otherwise would be to "turn a blind eye to these terms and hold an insurance company liable for risks for which it never contracted." *Roberts*, 668 F.3d at 113.

The Maryland Court of Special Appeals in *Jeffers* recently affirmed this rule. Defendants sought to hold the insurer liable for elevated blood lead levels that occurred after they moved from the insured property. The court limited the insurer's liability, explaining: "By its terms, a CGL policy ... applies only to bodily injury that occurs during the policy period." 244 Md.App. at 489 (citation omitted). The fact that there was "no evidence of [defendants'] injurious exposure after they moved out of the [insured property]" was "immaterial" to the question of whether insurer was obligated to indemnify the payment of the judgment. *Id.* at 491. Relying on *Roberts*, the Court

explained that such a question of liability is only answered by reference to the underlying contract. *Id.* at 491–92.

Both parties here agree that the denominator is 562 days, the time from Anthony's birth to the date of his last elevated blood lead level. ECF No. 27-1 at 14; ECF No. 28-1 at 10. *See Jeffers*, 244 Md.App. at 492 (explaining that the lower court erred by failing to conclude that defendants' bodily injury ended "at the time of their last elevated blood-lead levels"). The dispute then exists as to the numerator: Penn National's time on the risk. *See Fishkind*, 2021 WL 2141543, at *2. Penn National contends that the numerator is the number of days that Anthony resided at the Property (totaling 458 days). Anthony asserts, however, that the numerator is the period of time that Fishkind had policies with Penn National, including the time after Anthony moved from the Property (totaling 638 days). In support of his argument, Anthony relies on expert testimony from the underlying action, including testimony from Dr. Simon, Anthony's expert lead risk assessor, and from Dr. Rogers, Anthony's expert neurobehavioral pediatrician. Dr. Simon stated that Anthony's residence at the Property "was a substantial contributing factor to his lead exposure and elevated blood lead levels" and that it was "the only source" of lead exposure that he knew of based on the evidence. ECF No. 28-1 at 3; ECF No. 28-2 at 107. Dr. Roger further explained that with chronic exposure to lead, meaning "lead absorption and getting in the body over a greater period of time, more than two months," lead could remain in the blood stream for "as long as a year." ECF No. 28-1 at 4; ECF No. 28-4 at 113. Penn National asserts that both experts were unable to say with certainty that Anthony's lead exposure came exclusively from the Property. ECF No. 29-1 at 141; ECF No. 29 at 5.

As the stated in *Roberts*, *Jeffers*, and *Kirson*, Penn National is liable only for damages attributable to the periods of risk and the properties that it contracted to cover. *See Roberts*, 668

6

F.3d at 109; *Jeffers*, 244 Md.App. at 492; *Kirson*, 2021 WL 979129, at *5. Penn National's CGL Policy covered the Property at issue, but not the 605 Curley Property where Anthony lived and continued to experience elevated blood lead levels. *See* ECF No. 27-3; ECF No. 28-5. Whether Anthony was exposed to lead at 605 Curley Property or whether his elevated blood lead levels were the result of chronic exposure at the Property at issue is "immaterial" because the question of Penn National's liability is one of their policy coverage, namely over the Property. *See Jeffers*, 244 Md.App. at 491. While Anthony may have been able to look to Penn National's insurance coverage to satisfy his full judgment if Fishkind "had insurance coverage against claims of bodily injury suffered *after*" he moved out, no such coverage has been identified. *See id.* at 492 (emphasis added).

The mere fact that Penn National's CGL policy extended through the date that Anthony had his last elevated blood lead level is not alone compelling. The case at bar differs from *Roberts* and *Kirson* because, here, the Property remained insured under the CGL policy. However, these decisions are still applicable because the CGL Policy at issue here still limited coverage to bodily injury that occurred at the covered property. A risk that arose after Anthony moved from the Property is simply not a risk Penn National contracted to cover, absent contractual language that specified coverage for bodily injury *after* Anthony moved out. *See Jeffers*, 244 Md.App. at 492; *Roberts*, 668 F.3d at 109.

Therefore, no genuine dispute of material fact exists that the numerator is, as Penn National claims, the 458 days Anthony resided at the Property subject to the CGL Policy. With the agreed-upon denominator of 562 days, Penn National is entitled to declaratory judgment that it is liable for 81.49% of the underlying judgment, or $659,939.43.

2. Pre-Judgment Interest

Anthony further argues that the Court should "resolve the payment of interest issue right now" in order to "avoid further litigation and delay on this matter." ECF No. 28-1 at 13. Anthony, like the defendants in *Kirson* and *Fishkind* represented by the same counsel, "seeks to recover pre-judgment interest in *this* action on the post-judgment interest that [Plaintiff] still allegedly owes her in the *Underlying* Action." *Fishkind*, 2021 WL 2141543, at *6 (emphasis in original). However, the Court has repeatedly rejected such an argument on the present facts.

"Prejudgment interest is available as a matter of right when the obligation to pay and the amount due is certain, definite, and liquidated by a specific date prior to judgment such that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 473 Md. 178 (2021) (citations omitted). In *Fishkind*, this Court examined its earlier decision in *Kirson* on pre-judgment interest:

> In *Kirson*, the [Court] concluded that pre-judgment could not be recovered in a declaratory judgment action for two reasons. First, because the parties' dispute centered on "whether the pro rata allocation approach applies and how it applies," the precise amount that the plaintiff owed the defendant was necessarily uncertain. Second, because neither the plaintiff's complaint nor the defendants' answers mentioned post-judgment interest, this issue was not properly within the scope of the parties' summary judgment motions.

2021 WL 2141543, at *6 (citations omitted). The Court explained that once it issued a dispositive decision, defendant could then "seek any post-judgment interest that [plaintiff] still owe[d] her under *Jeffers*'s rule through the state court case between these parties." *Id.* at *7.

In *Kirson*, this Court rejected defendant's request for pre-judgment interest, first, because the "actual amount due" was "not initially 'certain' and 'definite' because the meter effectively kept running until [Plaintiff] made a tender of its share of the judgment." 2021 WL 979129, at *7

(citations omitted). It also concluded that "even focusing only on [defendant's] argument that [the] amount of post-judgment interest on the state court judgment was certain, the Court [found] no basis to award pre-judgment interest on that amount" because whether and in what amount such post-judgment interest was due was not the subject of any claim before this Court. *Id.* "The Answers . . . asserted no counterclaims seeking a ruling on whether post-judgment interest on the state court judgment was owed and whether it was on the full amount of that judgment." *Id.* In *Fishkind*, this Court again concluded that pre-judgment interest was not warranted because (1) the parties' disagreement over the extent of Penn National's liability on the underlying judgment made the amount owed "inherently uncertain," and (2) pre-judgment interest "was not raised in either party's pleading." 2021 WL 2141543, at *6.

I find these prior decisions compelling. This action, as in *Kirson* and *Fishkind*, involves a disagreement about the amount owed on the underlying judgment and is thus "inherently uncertain." *See id.* The parties "disagree over how much of the [judgment] must be paid by Penn National, or in other words, how the time-on-the-risk pro rata allocation methodology applies to the facts of this case." *Id.* Moreover, the CGL policy provision on interest was not offered in the present action as it was in *Kirson*. *See* 2021 WL 979129, at *7. The amount of pre-judgment interest owed in the present case is thus even more uncertain than in *Kirson*. And there is no amount of payment that is certain because Penn National has yet to make any payments, unlike in *Kirson*. Anthony relies on *Jeffers* to assert that "an insurer is liable for all post-judgment interest even if the insurer is not contractually obligated to indemnify the insured for the entire judgment." 244 Md.App. at 499. However, Anthony has provided neither a standard interest clause from the CGL Policy at issue, nor a compelling reason for this Court to deviate from the reasoning in its past

decisions.[4] When the parties' dispute centers on whether and how "the pro rata allocation approach applies," the amount owed to Defendant is "necessarily uncertain." *Fishkind*, 2021 WL 2141543, at *6 (quoting *Kirson*, 2021 WL 979129, at *7). Therefore, the Anthony's request for pre-judgment interest is DENIED.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that there are no genuine issues of material fact about the amount to which Penn National is liable to Anthony based on the underlying judgment. Penn National's liability is based upon a pro-rata time-on-the-risk analysis under Maryland law. Thus, it is only liable for 81.49% of the underlying judgment. Further, the question of pre-judgment interest is not properly before this Court. Therefore, Penn National's Motion (ECF No. 27) is GRANTED, and Anthony's Motion (ECF No. 28) is DENIED.[5] A separate order will follow.

Date: 6 October 2021

A. David Copperthite
United States Magistrate Judge

---

[4] The Court acknowledges that Anthony requested the CGL Policy's provisions on interest, which Penn National failed to provide. ECF No. 28-1 at 13. However, the Court will not consider the specific policy language in *Jeffers* as a substitute for the CGL Policy at issue here. In moving the court for summary judgment, Anthony bore the burden of proof and that has not been met here. *See Celotex Corp.*, 477 U.S. at 322–24.

[5] Accordingly, Anthony's motion for partial summary judgment (ECF No. 21) is denied as moot.